# Eastman et al. v. Reid et al.

*Bill in Equity to enforce Specific Performance of a Contract.*

1. *If contract can not be performed, damages should be awarded in the alternative.*—When a bill in equity is filed for the purpose of enforcing the specific performance of a contract, the assessment of damages against the defendant can not properly be made until it is shown he was, or might be unable to perform his contract, and then, not without giving him an opportunity do so; the damages in such cases being awarded in the alternative.

2. *Complainant's knowledge of defendant's inability to perform a contract defeats a bill filed for that purpose.*—If, at the time of filing a bill to enforce the specific performance of a contract, the complainant knows that the contract can not be specifically performed, his bill will not be entertained for the purpose of granting him compensation by the award of damages.

3. *When separate decrees in favor of several complainants erroneous.*— When one of two complainants in a bill seeking the specific performance of a contract derives his interest in the contract from the indorsement thereon by his co-complainant, it is error to render two separate decrees against the defendants, one in favor of each com-

[Eastman et al. v. Reid et al.]

plainant; there should be but one joint decree in favor of complainants.

4. *Alleged fraudulent transfer of stock; when moneyed decree against transferee erroneous.*—In a bill seeking the specific performance of a contract for the transfer of stock in a corporation to complainants, where it is alleged that the contractor had transferred all of his stock in said corporation to 'his wife without consideration, and to defraud complainants, but there is no averments showing that the wife had any knowledge of, or connection with the alleged fraudulent design, it is error to render a moneyed decree against the wife, although she was a party defendant to the said bill.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on April 11, 1891, by the appellees, John B. Reid and L. W. McCants against Elwell Eastman and Mary E. Eastman, his wife; and sought the specific performance of an alleged contract. A copy of this alleged contract was made an exhibit to the bill, and was in words and figures as follows: "Birmingham, Ala., Nov. 30, 1888. John B. Reid, Esq., Dear sir: I make you the following proposition: that if you induce Mr. Sedden, Pres. of Sloss Co., to subscribe $10,000 to the Tenn. City and Brown Ore enterprise, I will obligate myself to procure for you $50,000 of stock in said enterprise. And I will further divide with you the 100,000 that I have for certain services, and further that you procure other subscribers I will obligate myself to procure for your services 100,000 additional stock in said enterprise. Respectfully, Elwell Eastman." There was the following indorsement on said alleged contract: "L. W. McCants: If you will aid me in this matter, I will divide equally with you. Yours, Jno. B. Reid."

The complainant, Jno. B. Reid, the party with whom said alleged contract was made, before the services were performed under it, on the 1st day of December, 1888, as is averred, assigned to L. W. McCants, his co-complainant, an undivided half interest in said contract.

The bill refers to the making of said alleged contract, by the said Elwell Eastman, with complainant, Jno. B. Reid, and avers that he promised, "if the said Reid would procure subscribers to the capital stock of a company, to be incorporated in the State of Tennessee, he would pay and deliver to the said Reid, for his services in procuring such subscribers, one hundred thousand dollars of the capital stock of the company to be organ-

21

ized " It is further averred, that complainants, acting under said contract, procurred S. T. Brittle, Geo. D. Fitzhugh and others to subscribe to the capital stock of the company to be formed, and thereby enabled said Eastman to organize his contemplated company in the State of Tennessee, under the name of the Benton Iron and Land Company, and said Eastman expressed himself satisfied with the manner in which complainants performed their part of said contract; that said Eastman received 212,000 dollars worth of the capital stock of said company, or 2,120 shares of its stock, which were paid to him for the services performed by him and complainants, and he has refused, though requested, to pay and deliver to complainants the 500 shares of the stock in said company, or any part of it, to which they are entitled under their said contract, and said 500 shares are worth $20,000 ; that with the view of preventing complainants from recovering their shares of said stock, the said Eastman has placed all of the stock which he owns in said company in the name of his wife, Mary E. Eastman, as appears by the books of said company, but he still owns and controls and has in his possession, the larger part of said stock ; that said transfer was made without any consideration, in fraud of complainants, while said Eastman was indebted to them, and that said Eastman does not own any property in his own name, which is subject to execution.

The prayer of the bill is for an injunction restraining defendants from disposing of said stock; that on final hearing it be decreed that the assignment of said stock by said Eastman to his wife be decreed to be void against complainants ; that said Elwell Eastman be required to surrender to the court 500 shares of the capital stock of said company, and that he be required to specifically perform his said contract. To this is added, a prayer for general relief. The defendants having failed to answer, decrees *pro confesso* were regularly entered against them.

The complainants examined several witnesses, whose depositions were read on the submission of the cause, who proved the services rendered by complainants, the value of the property of the company, organized partly by their efforts, and the value of the stock in said company.

[Eastman et al. v. Reid et al.]

One of these witnesses, John H. Parker, testified, that he was the president of said company, and had been, since the date of its organization, and knew complainants and Elwell Eastman ; that said company was organized with a capital of $1,000,000, and the stock was paid in, at $6 per share, which is supposed to be worth $15 or $25 per share ; that five shares of the stock were issued to E. Eastman and still stands on the books in his name ; that none was ever issued to Mary E. Eastman ; that 885 shares were issued to Mamie L. Eastman, and, on July 18, 1889, 65 shares were transferred by Mamie L. Eastman to S. T. Brittle, and it still stands in his name ; and on the same day, 20 shares were transferred by her to C. W. Williamson, and still stands in his name.

The court, after a reference to the register to ascertain the amount of the stock that each of the complainants was entitled to, and its value, and on the coming in of his report, rendered a moneyed decree or judgment in favor of each of the complainants, for $7,500 against both the defendants, specifying in the decree that the amount of the separate judgment in favor of each complainant was the value of the stock agreed to be delivered to complainants, respectively. There was no decree for specific performance or for anything else, except for the recovery of said sums of money by each of the complainants. The defendants appeal, and assign this decree as error.

LANE & WHITE, for appellants.—The bill does not present a case for specific performance.—3 Brick. Dig. 419, 426. Decrees *pro confesso* are admissions of such facts only as are well pleaded, and do not aid or supplement defective averments—*McDonald v. Mobile Life Ins. Co.*, 56 Ala. 468. The decree was not in accord with the prayer of the bill, which was for the specific performance of an alleged contract; and such decree was, therefore, erroneous.—*Strange v. Watson*, 11 Ala. 325 ; *Thomason v. Smithson*, 7 Porter 144 ; 3 Brick. Dig. 378, 183.

W. R. HOUGHTON and W. A. COLLIER, *contra*.—The decree *pro confesso* is an admission of all the facts alleged in the bill.—*Johnson v. Kelly*, 80 Ala. 135 ; 1 Daniel Ch. Pr. & Pl., 526. The allegations of the bill show a ground of equitable jurisdiction, and, having taken jurisdiction,

[Eastman et al. v. Reid et al.]

the court will settle the whole controversy.—*Freider v. Lienkauff & Strauss*, 92 Ala. 469, 8 So. Rep. 758, and authorities cited.

HARALSON, J.—I. This bill is one ostensibly for specific performance of a contract, alleged to have been made by defendant, Elwell Eastman, with complainant, Jno. B. Reid.

Without deciding whether the alleged contract is one that can be decreed by a chancery court, to be specifically performed or not,—as to which, it may be said, there are grave doubts,—yet, if the bill was filed and entertained for that purpose, an assessment of damages against defendants could not properly have been made, until it appeared that the defendant, Elwell Eastman, was, or might be unable to perform his contract, and then, not without giving him the opportunity to do so. Damages in such a case should be awarded in the alternative.

It may be accepted as a general and a correct rule, that if a complainant knows, at the time he files his bill, that the contract can not be specifically performed or decreed, the bill will not be sustained for a compensation in damages, for it would be one, then, purely for the recovery of a moneyed demand, of which a court of equity has no jurisdiction.—Waterman on Specific Performance, § 516; 1 Pom Eq. Jur., § 178.

This same author (Waterman) says : "Where the defendant deprives himself of the power to perform the contract specifically during the pendency of a suit to compel such performance, a court of equity may retain the suit, and award to the complainant compensation in damages, to prevent a multiplicity of suits. And such a decree will be proper, where the defendant has deprived himself of the power to perform the contract, prior to the filing of the bill, but without the knowledge of complainant, or, even when the defendant never had the power to perform, if the complainant filed his bill in good faith, supposing, when he brought the suit, that specific performance of the contract could be obtained. The rule assumes, of course, a sufficient contract and performance by the plaintiff, and every other element requisite on his part, to the cognizance of his case in chancery ; and that, the special relief sought is defeated, not by any defense or counter equities, but simply because

[Eastman et al. v. Reid et al.]

an order therefor would be fruitless from the inability of the defendant to comply. * * * Relief must then be given by a decree in the alternative, awarding damages unless the defendant should secure the specific performance sought. In many cases, this would be an effective and proper course, inasmuch as the defendant, although not having himself, at the time, the title or capacity requisite to such performance, might be able to procure it otherwise."—Waterman on Spec. Perf., § 517.

II. Nor was it proper or consistent with equity practice in such a case, to render two separate decrees against the defendants, one in favor of each complainant, for one-half of the total damages assessed against both. The decrees of a chancery court are very numerous and elastic. Speaking on this subject, Mr. Pomeroy says: "It is absolutely impossible to enumerate all the special kinds of relief which may be granted, or to place any bounds to the power of courts in shaping the relief in accordance with the circumstances of particular cases. * * * The ordinary remedies, however, which are administered by equity, those which are appropriate to the circumstances and relations most frequently arising, are well ascertained and clearly defined."—1 Pom. Eq. Pl., § 170.

It is not pretended that complainant, McCants, had any contract with the defendant, Eastman, for which he alone could sue him, either for a specific performance, or for damages. Reid simply endorsed on Eastman's proposal for a contract with him, a proposition to McCants,—"If you will aid in this matter, I will divide equally with you." This was done, so far as appears, without the knowledge or consent of Eastman. If it were conceded that under the allegations of the bill, McCants, having aided Reid to get up the stock, was a proper party plaintiff, still that did not subject defendants to a double moneyed decree. With all the elasticity and adaptability of chancery decrees to meet variant reliefs, there were no peculiar equitable considerations in the case, to make such a decree as was rendered proper. If free from any other objection, the decree should have been a joint one, in favor of complainants.

III. But, on what principle was it, that this double moneyed judgment was rendered against Mrs. Eastman? It is not averred that she had any thing to do with Mr.

[Burgin v. Hawkins, Treasurer.]

Eastman and his proposed contract with complainant, Reid, or that she ever knew about it. Nor is it averred or shown, that she had any connection with the fraud by which it is alleged her husband sought to deprive complainants of their stock. The only allegation which connects her with the case at all is, that said Eastman "has placed all of the stock of the said Benton Iron and Land Company which he owns in the name of his wife, Mary E. Eastman, as appears on the books of the company, but [he] still owns and controls said stock and has the larger part thereof in his possession." The only excuse for making her a party was, that in the event the stock was found to be in her name on the books of the company, as alleged, and complainants presented a case for relief, the court might, by its decree, divest the title out of her, and invest it in complainants, to the extent of their rights, or order her to transfer it to complainants, but, never to expose her to an absolute and unconditional moneyed judgment on such an allegation as is made concerning her. In allowing the decree *pro confesso* to be taken against her, what did she admit? Nothing to show that she knowingly had any responsible connection with this matter whatever. Surely a judgment should not have been rendered against her, on an allegation of fraud committed by her husband, with which it is not alleged she had any knowledge or connection.

IV. It may be, that under the authorities, *Mamie L.* could be taken and held to be identical with *Mary E.* Eastman, but to avoid any question as to the identity of the two names, it will be safer to eliminate that question from the case by an amendment.

Reversed and remanded.