### A. Bosley et al., Defendants in Error, v. Ferdinand W. Peck, Jr., et al., Plaintiffs in Error.

### Gen. No. 20,250.

1.  SPECIFIC PERFORMANCE, § 99*—*when damages not decreed.* Damages will not be decreed in an action in equity for specific performance of a contract where it appears from the evidence the complainant knew at the time he brought the action that the court could not grant specific performance.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

2. SPECIFIC PERFORMANCE, § 4*—*when bill retained though performance impossible.* Where it develops in an action for specific performance brought in good faith, that the defendant never had the property in his power which he sought to convey to the plaintiff, or without the plaintiff's knowledge before the litigation began, or through his tortious action after it had begun had put it out of his power specifically to perform, the bill need not be dismissed because the plaintiff could recover damages in an action at law.

3. SPECIFIC PERFORMANCE, § 4*—*when bill shows knowledge by complainant of impossibility of performance.* Allegations of bill for specific performance of a contract to convey, *held* to show that at the time of the filing of the bill complainant had knowledge of the impossibility of performance by defendant, thus preventing the retention of the bill for the purpose merely of assessing damages.

4. EQUITY, § 56*—*when objection to adequacy of legal remedy not waived.* Withdrawing a general demurrer and filing an answer, claiming the benefit of a demurrer, does not deprive a party in an action in equity of the right to raise the question that the defendant has an adequate remedy at law.

Error to the Circuit Court of Cook county; the Hon. ADELOR J. PETIT, Judge, presiding. Heard in this court at the May term, 1914. Reversed and remanded for proceedings not inconsistent with this opinion. Opinion filed April 26, 1915.

W. N. HORNER, for plaintiffs in error.

RINGER, WILHARTZ, LOUER & CONCANNON and DAVID JETZINGER, for defendants in error.

MR. PRESIDING JUSTICE BROWN delivered the opinion of the court.

This writ of error was sued out to reverse a money decree against the plaintiff in error for $10,000 rendered by the Circuit Court of Cook county in a suit in equity, purporting to be for the specific performance of a contract for the sale by plaintiff in error (defendant below) to the defendants in error (complainants below) of the buildings, machinery, fixtures, material, supplies and property constituting the roll-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

ing mill plant formerly belonging to the American Rolling Mill Corporation located at Muncie, Indiana. The amount was arrived at by the chancellor, it must be presumed, on the evidence returned by the master in chancery to whom the cause was referred May 18, 1910, to take evidence and report the same "with his opinion on the law and the evidence," and re-referred March 22, 1912, "for the sole and only purpose of hearing further evidence as to the measure of damages." But the chancellor did not follow the findings of the master on either reference.

On the first reference the master recommended as the proper conclusion from his findings (which involved a computation of "damages" to the complainants from the breach of the contract by the defendant) "that a decree be entered finding in substance that specific performance of the contract in the bill of complaint  *  *  *  cannot be decreed and that complainants are entitled in lieu thereof to damages and that the amount of the damages be fixed at the sum of $15,000."

On the reference he reported that he estimated $16,000 "to be the amount of damages that complainants suffered by reason of the refusal of the defendant Ferdinand W. Peck, Jr., to abide by and perform the contract  *  *  *  entered into between the said Ferdinand W. Peck, Jr., and the complainants."

The exceptions of defendant to the master's report, although attacking generally all the findings of the master as to the damages and his right to find any damage at all, contain no alternative computations, nor do they suggest any specific deductions. On what ground, therefore, the chancellor, without the assistance of a jury or of any further evidence than that produced before the master, came to his conclusion, differing from one computation of the master by $5,000 and from the other by $6,000, it is impossible from anything in the record to determine. There would

seem to be no basis in the evidence for the exact amount fixed on. The computation was apparently of that kind by which a jury adjudging damages in a personal injury suit or case of fraud fixes on some round sum as a proper amount to award the plaintiff.

But we are relieved from the necessity of considering the amount of the damages assessed and decreed in this cause by our holding on the question which meets us on the threshold of the discussion of it.

We are not of the opinion that the chancellor had jurisdiction in equity to render a decree for damages. The bill was brought ostensibly for the specific performance of a contract of sale. The contract may be conceded to have been of a nature and concerning objects which rendered it a proper basis for such a bill if brought in good faith to secure specific performance.

It may be also conceded as well-settled law that if the bill were brought in good faith for a specific performance, and it developed in the litigation that the defendant, misleading the complainants, had never had it in his power, or without their knowledge before the litigation began, or through his tortious action after it had begun, had put it out of his power specifically to perform, the bill need not be dismissed because the plaintiff could recover damages in an action at law. But none the less the law is as stated in *Peeler v. Levy,* 26 N. J. Eq. 330:

"A court of equity will not take jurisdiction of a naked claim for damages, even when it is made under the guise of a suit for specific performance."

Notwithstanding the argument of the complainants, we think that not the mere phrasing but the very substance of his bill, when taken in connection with the proceedings taken therein and undisputed evidence, shows that it could not have been brought in good faith for a specific performance.

The bill does indeed pray that "the defendants"

(meaning Ferdinand W. Peck, Jr. and Charles P. Taft, who were originally made defendants to the bill) "may be made specifically to perform said agreements entered into with" the complainants and make delivery and a good and sufficient conveyance to "the complainants of said property;" and there is a further prayer that "the defendants and their agents and attorneys be restrained by order and injunction   *   *   *   from selling or attempting to sell, assign or otherwise disposing of said property to any other person, persons or corporation until the further order of the Court," and for further relief.

But the allegations of the bill are that Peck alone "being or pretending to be" on November 27, 1909, "seized and possessed" of certain property, entered into the agreement for sale described, and that although the complainants were ready to comply with the contract, Peck refused to do so, and that *"since the execution of the agreement as aforesaid"* the complainants *"have been informed and charge the fact to be, that said Ferdinand W. Peck was in the making of said agreement acting for himself and as agent for his undisclosed principals, one C. P. Taft and others to"* the complainants *"unknown."*

A summons on the bill was issued for both Peck and Taft on the day the bill was filed, and returned the same day. Peck had been served; Taft had not been found. He did not appear, and there is not shown any further attempt by the complainants to bring him in. The cause was carried on by the complainants without regard to him or to the "others" to the complainants "unknown," for whom they expressly charge Peck was acting in making the agreement. Answer having been filed by Peck, in which he stated that he did not own the property when he made the contract and could not deliver it or sell it because he could not get the consent of those who did (in which answer he claimed the benefit of a demurrer), a general replica-

tion was filed by the complainants. On their motion, over the objection of Peck, the cause was referred to a master, before whom a great mass of testimony was taken at the instance of complainants, almost altogether on the subject of damages for the breach of the contract. Months after the last report was in, and four days before the decree was entered, the fact that Taft was a party to the suit was first again recognized by the complainants by the motion (which of course was granted) to dismiss the bill as to him.

The bill described the property involved as a rolling mill plant on certain lots specifically described in Muncie, Indiana, and the agreement for sale, made, as an exhibit, a part of the bill, mentions an undefined claim of persons to whom certain "supplies and material," presumably from the bulk of the property purchased, had been sold "by order of court in bankruptcy proceedings," and also mentioned a mortgage or trust deed from the American Rolling Mill Corporation to the Union Trust Company of Indianapolis.

The evidence shows that as a matter of fact the property stood when the bill was brought on December 24, 1909, in Otto Gresham, trustee; that it had been conveyed to him under an order of record of the District Court of the United States at Chicago, in case No. 12,636 of the same date; that the conveyance to Gresham as trustee of the property (together with the land on which it was located), had been recorded in the recorder's office of Delaware County, Indiana, where Muncie is situated, on May 7, 1908. It appears also by the testimony of Ferdinand W. Peck, Jr., that Otto Gresham held it as trustee for Anna Sinton Taft and Lewis C. Straight, and that the Sunday Creek Company of Columbus, Ohio, also had an equitable interest in it. Peck further testified that he told the complainant Bosley more than once that he had no interest, legal or equitable, in it when the contract was made by him with them; but this was denied by

Bosley and his denial was confirmed as to some at least of the alleged conversations by another witness.

But despite the apparent admission of the defendant's counsel on page 43 of his argument herein, that Bosley testified that he had no notice of any defect in the title of the defendant Peck *at the time that he filed his bill,* we can find no such testimony by Bosley in the record to contradict the statements of the bill itself.

Bosley being placed in rebuttal on the stand before the master on July 6, 1911 (pages 462 and 463 of Record), on direct examination made an unintelligible answer to an unintelligible question as to what he knew about the ownership of the property on the day the bill was brought. On cross-examination, counsel for defendant seemed, however, to bring out from him what prima facie was a clear expression of knowledge at the time he was testifying that the defendants Ferdinand W. Peck, Jr., and Charles P. Taft owned the property on December 24, 1909, but on the examination being pursued, he said that he derived that knowledge wholly from "complainants' Exhibit A. of March 9, 1911." Complainants' Exhibit A. of March 9, 1911, was a deed dated May 7, 1910, of the property and real estate on which it was located, from Otto Gresham, trustee, to the American Scrap Iron & Machinery Company, to which is attached a contract of warranty of Otto Gresham's title and a contract of indemnity for the benefit of the American Scrap Iron & Machinery Company, signed by Anna Sinton Taft and Clarence I. Peck. Neither the name of Ferdinand W. Peck, Jr., nor the name of Charles P. Taft appears in either of them.

The testimony of Bosley, if it could be understood to mean that he thought on December 24, 1909, that the defendants Ferdinand W. Peck, Jr., and Charles P. Taft then owned the property, would be incredible to us, considering the actual facts in connection with

Bosley v. Peck, 192 Ill. App. 366.

the allegations of his bill; but it really is not capable of any such construction or interpretation. The bill shows, we think, that the complainants knew when they filed it that specific performance was not within the powers of Taft and Peck separately or even together, to make. This opinion is strengthened by what the evidence shows of the facts and by the apparent lack of interest of the complainants in obtaining jurisdiction of Charles P. Taft and their confining the prosecution of the suit to the pursuit of the person who had signed in his own name a contract of sale which had been repudiated. The belief is forced on us that the proceeding was "a naked claim for damages" for a broken contract "under the guise of a suit for specific performance." If this was so, a court of law was the proper forum for its prosecution, and a jury, if desired by either party, the proper tribunal to assess damages if they were found to exist.

The statement that Peck and Taft, in the behalf of the complainants, were about to sell the property to some one else and the request for a preliminary injunction do not change the situation. It is to be noted that no attempt was made to secure any such injunction.

Nor does the fact that a general demurrer was withdrawn and an answer filed by Peck, claiming the benefit of a demurrer, prevent, under the rules of equity practice and pleading, his having the advantage of this jurisdictional question, which he not only now raises but raised below at every stage of the proceedings before the master and before the court.

We do not agree with the finding of the chancellor in the decree:

"That this suit was brought by the complainants in good faith and in the honest hope and expectation that they would obtain a decree for a specific performance of said contract,"

and the withdrawal of that conclusion from the decree would in our opinion leave it without a basis. *Peeler v. Levy*, 26 N. J. Eq. 330; *Eastman v. Reid*, 101 Ala. 320; *Stevenson v. Buxton*, 37 Barb. (N. Y.) 13; *Lewis v. Yale*, 4 Fla. 418, p. 437; *Iszard v. May's Landing Water-Power Co.*, 31 N. J. Eq. 511; *Milkman v. Ordway*, 106 Mass. 232, p. 256; *Durell v. Pritchard*, 1 Ch. App. Cas.; The Law Reports vol. 1, 1865 and 1866, XXIX and XXX Victoria.

In accordance with these views, we reverse the decree and remand the cause to the Circuit Court for proceedings not inconsistent with this opinion.

As to whether the complainants can recover damages at law, or may have their case transferred to the law side of the court, under section 40 of the Practice Act, we express no opinion. This bill and the decree upon it cannot be sustained.

*Reversed and remanded for proceedings not inconsistent with this opinion.*